Alonzo. Good morning, Your Honor. My name is Anthony DiPietro, and I represent the appellant, Ronald Gi Alonzo. In resolving this case through a plea agreement with the government, Mr. Gi Alonzo made significant concessions, including his relinquishment of his right to a trial by jury, his voluntary forfeiture of $1.25 million, and the sale of his primary residence in which his wife and four children resided. These were not trivial concessions and were facts that should have been considered in determination of his punishment on the 3553A1. But you're saying they weren't considered? Yes, Your Honor. Or just that the judge didn't give them sufficient weight? No. Our position is the district court, at pages 32 to 33 of the sentencing transcript, which is at the appendix 167 to 168, incorrectly determined that only cooperating witnesses could receive extraordinary acceptance of responsibility. So that's the question. Just continue with your answer to Judge Sullivan's question. But so you're making that argument as a procedural error, right? Yes. That is a procedural error in which abuse of discretion applies because there was a contemporaneous colloquy with Mr. Gi Alonzo's counsel in which she disagreed with the district court that that is the only way that someone could get consideration for extraordinary acceptance of responsibility. And not only — Just to be — Sorry, Your Honor. Doesn't plain error — isn't this reviewed for plain error? Well, Your Honor, I think we need to parse the claims in that sense, because where there is no contemporaneous objection, then, of course, plain error applies. However, for review of whether the sentence is substantively reasonable, our position is that's under an abuse of discretion and a fulfillment of Rule 51. We're talking substantive reasonableness. We're back to procedural reasonableness. I think as long as there's a contemporaneous objection — Where is the contemporaneous — In that position, the — the counsel had disagreed with the district court that the only way a defendant could receive consideration under 3553A for acts of pre-sentencing rehabilitation or good works, voluntary restoration or remorse should not be limited only to cooperating witnesses. That is not consistent with 3661, which states that no limitation shall be placed on information concerning the defendant's background, character or conduct. In addition, in Pepper, the Supreme — When you — when you return on rebuttal, could you point him — point me to where the objection is? Yes, Your Honor. It's at Sentencing Transcript pages 32 to 33, and that's at Appendix 167 to 168. The Court made two points there that were error. One is that it determined that only — I want to know where the objection was made. Okay. Your Honor, I think it's — it's not — it is explicit in the sense that counsel stated, I disagree with Your Honor's position, but that is the limit of the objection, but we think that's sufficient under Rule 51, that the counsel did not need to go further and state that there was more, you know, a concrete objection other than counsel stating its position and the district court denying that position. And going back to this point, in Pepper, the Supreme Court made clear that a sentencing judge should consider the fullest information possible concerning a defendant's life and characteristics. As previously mentioned, these were not trivial concessions by Mr. Giolanzo and his wife and his family to give up their home in which their children resided. These were extraordinary acts by a man and his family trying to make right what was wrong. While Mr. Giolanzo is not entitled to a particular result, he is entitled to a process in which the district court considers that evidence in mitigation. And even if it has a minimal impact — Doesn't it — doesn't it, just going back to Judge Sullivan's question, where can you say that the district court didn't consider, maybe didn't make the evaluation that you would want in terms of an outcome, but that's not the same thing as saying they didn't consider? Your Honor, I think the record is clear, and that the district court stated that only a cooperating witness can receive credit for extraordinary acceptance responsibility. And even on the matter of voluntary forfeiture, the district court made a comment stating, well, the government could have gone after the forfeiture regardless of the fact. But that is not the fact. The fact is he voluntarily gave up $1.25 million, he saved the court resources, he saved the court litigation, and also the government, there was no guarantee that they would be able to substantiate that amount. Those are all factors that should have been considered on the 3553A1. In addition, the district court, in varying upward, did not identify a sufficiently compelling reason to support the variances imposed, other than relying on factors that were already accounted for in the guidelines, including the fact that Mr. Giolanzo had received separate penalties for his prior case and two violations of supervised release. In addition, he received- I thought that what was important in the district court's mind, and please correct me if I'm wrong, is that nothing, in her view, had seemed to deter him. Well, Your Honor, in that sense, Mr. Giolanzo was punished three times over. He had shown acts of atonement and remorse in connection with this sentencing, and those factors were considered in the guideline range. He received three criminal history points for his prior case. He received two criminal history points for the fact that he committed the offense while on supervised release. That put him in a Category 3. That elevated the guidelines and was already accounted for. In varying upward on both sentences, the district court relied on the same factors that were already contemplated. And as this Court has stated- Could it have done that had it acknowledged it was doing that? I'm sorry, Your Honor, can you repeat that? Could it have varied upward based on those same factors had it explicitly acknowledged that that's what it was doing, saying, I know these factors are accounted for, but I find them particularly egregious in the case of your client, and therefore I am departing upward? In that sense, Your Honor, I think that may have been more prudent, but I don't think that still justifies the major variants that were imposed, because they used the same factors to impose a variance on the- No. If that had been done, would that have been a procedural error or a substantive error? That would be a substantive error, right? He got too much time regardless. The factors were already considered and weighed in varying upward. No, but had it acknowledged that the factors were considered and weighed, but I'm giving them extra weight because- Yes, Your Honor, then that would lean towards a substantive error. But in this case, that's not what happened. The district court did not make specific findings as to why those factors, which were already accounted for, would elevate the guidelines. And the same holds true with the district court's explanation that this was a long period of time and there was many acts. The relevant acts were considered in the guidelines, and those units drove up the guideline calculation. So each and every factor that the district court identified was already accounted for. And as I said, Mr. Giolanzo suffered severe consequences for each violation and his prior case. He served his time on those offenses. He should not have been repunished based on those factors. And he was technically, because the guidelines, like I said, already accounted for the fact that he had violated supervised release and committed the offense while on supervised release, and his criminal history category elevated to Category III based on those same factors. I see that my time is up. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Keith Edelman for the United States, and I was counsel for below. All of the Defendant Giolanzo's claims, which are reviewed for plain error, are without merit, and therefore the sentence should be affirmed. Beginning where counsel began his argument, the district court simply disagreed with counsel's characterization of Mr. Giolanzo's acceptance of responsibility as extraordinary. She did not preclude the defense from making that argument. She considered the fact that he pleaded guilty. She gave him three points reduction for acceptance of responsibility. She took issue in a disagreement with the word extraordinary. And that was simply the judge's determination not to give as much weight to that factor than as defense counsel would have liked, which, of course, the district court was permitted to do. On the standard of review, I will note at Mr. Giolanzo's appendix at page 168, defense counsel said in response to the district court's argument that it views extraordinary acceptance of responsibility as only dealing with cooperators. Defense counsel said, quote, I understand Your Honor's point, but I don't think that the only way one can accept responsibility in an extraordinary way is by cooperating with the government. That's not an objection sufficient to justify or sufficient to avoid plain error review. That is, again, an argument with the district court about what weight that the district court should have assigned to that factor. Breyer. Can I ask you about the 144-month sentence? Yes, Your Honor. Why, in your view, does the court's statement, 87 months didn't do it, why is that sufficient as an explanation for the variance of the court? Well, that's not the only thing the court cited in its explanation as to why that sentence was justified. But the court was noting a significant sentence of 87 months did not deter the defendant. And when he got out, he needed – he committed additional crimes. But as I noted, there are many facts that the district court cited that were not accounted for in the guidelines. Number one, the fact that Mr. Giolanzo committed many of his crimes from jail is not a factor that is accounted for in the guidelines or the criminal history calculation. Number two, the fact that Mr. Giolanzo was responsible as relevant conduct for sanctioning The fact that Mr. Giolanzo essentially used his brother-in-law, a family member, to commit crimes on his behalf, another factor cited by the district court that was not accounted for in the guidelines. The fact that Mr. Giolanzo possessed a gun while on supervised release, a fact in the PSR that Mr. Giolanzo did not object to, not accounted for in the guidelines. And there are many others as well. These are all facts not accounted for in the guidelines that the district court cited in its lengthy recitation of why it was giving this sentence. The district court's explanation goes on for 11 pages or so and detailing all of the 3553a factors and explaining why its sentence was justified. And at the end of that sent – that recitation, the district court said, given everything that has been presented, all of the facts and circumstances, that it imposed a variance of 144 months. On plain error of view to this Court, that is not a sufficient explanation to permit this Court to understand why the district court did what it did and to give the public confidence in the nature of those proceedings. Turning back briefly just to a moment as to the argument of extraordinary acceptance of responsibility, I note that Mr. Giolanzo's agreement to forfeit his home was not in any way extraordinary. The government had already initiated civil forfeiture proceedings against the House. He was only required to forfeit $1.25 million, and the home was actually put up for sale at the time of sentencing with a price of $2.9 million. And so he was able to retain the excess of that amount. And so, therefore, even the district court's rejection or placing less weight on that argument was entirely proper. Looking at the, what the government was doing in the, in the trial court, at times reading the, the transcript, one has the sense that the government lawyer was almost trying to egg on the, the district judge to, to, to go above what the plea agreement suggested, to go above the, the 87 months. I respectfully disagree, Your Honor. Viewing the sentences that were cited in the defense's argument, the egging on is simply the government's vociferous, strenuous argument for a sentence at the top of the Guidelines range. The government had negotiated this provision, which is not in every single plea agreement, that it was allowed to ask for a specific sentence within the Guidelines range. And time and time again, the government said, we're asking for this sentence. All of the description of the, of the defendant's conduct, all of the fact of his prior history, that was all geared to the repeated statement that this is what the government was seeking. In its sentence the objection to what the government was saying at the time of the sentencing. No, Your Honor. And I think that's powerful evidence as to that the expectation of the parties was fulfilled. Mr. Gilonzo had two experienced defense counsel who were there during sentence. Never raised an objection to any of the government's comments, because the government during its sentencing memo repeatedly asked for a sentence at the top of the Guidelines range. Twice during its oral argument, its arguments to the court said we're asking for a sentence at the top of the Guidelines range. And even when defense counsel began its argument, the district court interrupted and said, I just want to make clear, the government, you're just asking for a sentence at the top of the Guidelines range. And we said, yes, Your Honor. This is not an implicit trying to get something above the Guidelines. It's a strenuous, vociferous argument for a sentence at the top of the Guidelines range for the lead defendant in a very serious case who is asking for a sentence at the below end, at the low end of the Guidelines range. And so we submit that our argument was proper in that regard. And what do you say to the view that the introduction of the statements of Judge Garifus were not, was not appropriate? I note, Your Honor, these were statements that Judge Garifus made at a public proceeding of another defendant who was arrested alongside Mr. Gialonzo for his associational violations at the VOSR. So this was not some off-the-record colloquy that defendant first intimated in his opening brief, but a statement by another judge that Mr. Gialonzo had gotten a break from his VOSR violation, and therefore, the sentence at the top of the Guidelines was warranted. And I also note the government made this statement. The district court never once mentioned Judge Garifus's statement, so there's no indication that even if this was improper, which, again, I submit it was not, there's no indication this affected the judge's decision. And again, no objection to that statement. No, no indication that it had been relied on. Precisely, Your Honor. And no objection, again, from defense counsel below. So unless the Court has any other questions, we submit that the sentence should be affirmed. Thank you, Your Honors. Your Honors, just picking up on that point, the law of this circuit is that the government must meticulously honor each and every promise it makes to a defendant when they relinquish the right to a jury trial. In this case, there was nothing the government could have done more than to breach that agreement. Wait a minute. Wait. I mean, they're allowed to argue for top of the Guidelines range, and you're saying they have to hold back facts? No, Your Honor. While they can forcefully argue for the top of the Guidelines range, they cannot use that. They just can't do it so well that the judge might decide that even that's not enough? Your Honor, in this situation, for example, most of the government's arguments were imported in the statement of reasons as to why there should be a variance. For example, the government told the district court, did 87 months deter him? Did that stop Mr. G. Alonzo? That was the top of the Guidelines range. That was the sentence he received in his prior case. Why did the government make that statement? If they were just seeking 87 months, why would they ask the district court, did 87 months deter him? We must send a message. The government went further. They said, the offenses for which you're sentencing to don't even scratch the surface of the criminal history of this defendant. They also stated that he committed crimes every day without any specification. You're saying there's something in the plea agreement that bars them from raising these facts or arguments? Your Honor, they're allowed to speak specifically of the offense conduct, and they're allowed to seek, based on that offense conduct, the high end of the Guidelines. But they can't paint such a horrid picture of the defendant that they undermine the legitimacy of the very agreement they made. Even if the canvas is already there? Even if the canvas is there. But, Your Honor, these were more ambiguous statements. For example, he committed crimes every day. What does that mean? That's not justified by anything in the record other than the prosecutor putting their thumb on the scale. Also saying to the court, listen, 87 months didn't deter him before. Well, 87 months is the top of the Guidelines here. So what are you implying to the district court to do? And the district court adopts that very statement in the Statement of Reasons and says, 87 months in the prior case did not deter him. If the government is supposed to meticulously honor its agreement, that is not how it's done. They cannot undermine the legitimacy of the adequacy of the Guideline range they agreed to by making statements but never crossing the line and saying, well, we definitely want you to sentence him higher. That was done here. I agree with you, Mr. DiPietro. What do we tell the district court? Your Honor, I think this is beyond the district court. This is one of the most sacrosanct. At the end of the day, we are going to write something that decides this case. Yes, Your Honor. And I think to protect you, if we agree with you, what do we say to the district court? What gets done? That in the interest of justice of protecting plea agreements and that the government must always meticulously honor those agreements, this case must be remanded to the district court and the government's arguments based on what they agreed to. Not that they can paint this picture. Are we telling the district court you have to sentence him to 87 months? No. The district court can then consider all of the factors, again, in a new sentencing proceeding, giving respect back to the court, respect back to the public, that they have belief in that when the government makes a deal, that someone waives their deal. That was not done here, and I respectfully submit this case should be remanded. But again, you're saying, so there was an 87-month sentence imposed by Judge Garifas previously, right? Judge Deary, Your Honor. Judge Deary, I'm sorry. And that sentence apparently didn't have the deterrent effect that it should have because he committed more crimes, right? Well, Your Honor, correct. Okay. So you're saying that it was improper for the government to mention the fact that it was an 87-month sentence because the top of the guidelines range here was also 87 months? Well, Your Honor, they implicitly made the argument and said he was sentenced to 87 months, which is the top of the guideline range on a prior case. Did that sentence, did the 87 months that Judge Deary gave him deter him from committing more crimes? I think the court knows the answer because we're here today. Right. That's as close as you can get to an explicit request to go above the guidelines. Thank you, Your Honor. Thank you. Thank you both for your arguments. The Court will reserve decision.